IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

WOOLSLAYER COMPANIES, INC., )
)
        Plaintiff, )
)
and )
)
JOSEPH WOOLSLAYER, )
HOMER J. WOOLSLAYER, and )   Case No. 19-CV-0438-CVE-FHM
JOHN M. WOOSLAYER, )
)
        Plaintiff-Intervenors, )
)
v. )
)
JEANNIE WOOLSLAYER, )
)
        Defendant. )

## OPINION AND ORDER

Now before the Court are defendant Jeannie Woolslayer's motions to dismiss the original complaint and the complaint in intervention (Dkt. ## 12, 27). Jeannie Woolslayer asks the Court to dismiss plaintiff Woolslayer Companies, Inc.'s (WCI's) complaint (Dkt. # 2) on the grounds that she has filed a Texas state court lawsuit presenting identical factual and legal issues. Dkt. # 12, at 1-2. Intervening plaintiffs filed a motion to intervene (Dkt. # 8) to protect the value of their shares of WCI, and that motion was granted. Dkt. # 18. WCI and intervening plaintiffs filed responses to Jeannie Woolslayer's motion to dismiss the original complaint (Dkt. ## 20, 25) and Jeannie Woolslayer filed replies (Dkt. ## 23, 28). Jeannie Woolslayer also filed a separate motion to dismiss the complaint in intervention (Dkt. # 27).[1]

---

[1]    Although a response and a reply to the separate motion to dismiss the complaint in intervention (Dkt. # 27) are not due yet, the issues presented in both motions are identical. Plaintiff intervenors responded to the first motion to dismiss (Dkt. # 25), and additional response is unnecessary. The Court deems both motions at issue.

**I.**

Jeannie Woolslayer was married to Joseph R. Woolslayer prior to his death on July 26, 2018. Dkt. # 2, at 2, 5. Joseph R. Woolslayer had acted in a variety of capacities for WCI, a privately-held oil and gas company. Id. at 2. In 2000, WCI amended its certificate of incorporation to authorize 100 shares of voting Class A Common Stock and 99,900 shares of non-voting Class B Common Stock. Id. Joseph R. Woolslayer owned all of the common stock that had been issued. Id. at 3. Subsequently, Joseph R. Woolslayer transferred 10,000 shares of Class B stock to Jeannie Woolslayer, and retained 10,000 shares of Class B stock for himself. Id. Prior to the transfer of 10,000 shares to Jeannie Woolslayer, WCI had the Class A stock and Class B stock independently appraised. Id. The Class B stock was valued at a discount due to its non-voting status. Id.

On July 10, 2018, WCI, Joseph R. Woolslayer, and Jeannie Woolslayer entered into an agreement (Redemption Agreement) for the redemption by WCI of either Jeannie Woolslayer's or Joseph R. Woolslayer's stock, should either of them predecease the other. Id. at 3-4. The Redemption Agreement was obligatory for WCI should Joseph R. Woolslayer or Jeannie Woolslayer choose to exercise their option to redeem. Id. at 4. The portion of the Redemption Agreement providing the price of redemption states:

> The price of the stock of each party to this agreement to be sold pursuant to this Agreement must be determined by appraisal of the fair market value of WCI. One appraiser shall be selected by WCI and one appraiser shall be selected by the Shareholder or the personal representative of a deceased Shareholder. In the event that both appraisers cannot agree on a value, they shall appoint a third appraiser whose valuation shall be binding on all parties. <u>The appraisal must be completed within sixty (60) days of the triggering event</u>. The cost of the appraisals shall be borne 50% by WCI and 50% by the selling shareholder or the estate of the selling shareholder.

Dkt. # 2-1, at 4 (emphasis added). The parties dispute whether a discount should apply to the Redemption Agreement, as there is no express provision in the Redemption Agreement regarding a discount to be applied. Dkt. # 2, at 5. Once Joseph R. Woolslayer died, 10,000 shares of his Class B stock were transferred to Jeannie Woolslayer. Id. On May 17, 2019, Jeannie Woolslayer gave written notice of her election that WCI redeem her 20,000 shares pursuant to the Redemption Agreement. Id. The parties dispute whether WCI caused an independent appraisal of Jeannie Woolslayer's stock. Compare id. at 6 with Dkt. # 12, at 4. However, the parties do not dispute that Jeannie Woolslayer caused an independent appraisal of her stock. Dkt. # 2, at 6. On June 12, 2019, WCI offered Jeannie Woolslayer a sum of $1,600,000 in consideration for her 10,000 shares of Class B stock. Id. This amount represented a discounted value of Jeannie Woolslayer's stock. Id. at 7. Jeannie Woolslayer refused the offer. Id.

On July 30, 2019, Jeannie Woolslayer filed a lawsuit against WCI and intervening plaintiffs in Texas state court. See Jeannie Woolslayer v. Lee C. Moore, Inc. a/k/a Woolslayer Companies, Inc. et al., Cause No. DC-19-10734 in the 298th Judicial District of Dallas County. Id. at 6. Jeannie Woolslayer claimed, inter alia, that

> WCI has breached the Redemption Agreement by failing to complete the appraisal process within sixty (60) days of Jeannie triggering the redemption of the stock. WCI has made an anticipatory breach of the contract by proclaiming that it will not go forward with the contractual redemption of Jeannie's shares without a Court order.
>
> Jeannie has been damaged by WCI's breach and anticipatory breach of the Redemption Agreement, and seeks specific performance of the Redemption Agreement and all attendant monetary damages.

Dkt. # 2-5, at 8-9 (emphasis added). Jeannie Woolslayer also claims tortious interference with an existing contract against intervening plaintiffs. Id. at 9. On October 3, 2019, intervening plaintiffs

3

removed the Texas state case to the U.S. District Court for the Northern District of Texas (Case No. 19-CV-02360-L). Dkt. # 25, at 2.

On August 7, 2019, after the Texas case had been filed, WCI filed this lawsuit seeking a declaratory judgment that Jeannie Woolslayer's stock is not subject to a discount. Dkt. # 2, at 8. WCI requested that

> the Court determine the rights and obligations of the parties under the Agreement and issue Declaratory Judgment as to whether, for purposes of the purchase price to be paid Jeannie pursuant to the Agreement, the value of Jeannie's Class B Common Stock should or should not be discounted to reflect the non-voting, minority status of such shares.

Id. at 8. Jeannie Woolslayer has moved to dismiss this case based on the first-filed Texas case.

## II.

At the outset, the Court notes that Jeannie Woolslayer filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Dkt. # 12, at 1. There is no challenge to the diversity jurisdiction of this Court or that WCI has stated a claim under the Declaratory Judgment Act. Rather, the question is whether the Court should exercise jurisdiction over WCI's complaint pursuant to State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 979 (10th Cir. 1994), because of a prior pending action. Fed. R. Civ. P. 12(b)(6) is inapplicable.

## III.

WCI asks the Court to issue a declaratory judgment that Jeannie Woolslayer's Class B stock is subject to a discounted evaluation. Dkt. # 2, at 8. Jeannie Woolslayer asks the Court to dismiss WCI's complaint because the pending Texas state court (and now federal court) case involves the same factual and legal issues to be decided by this Court. Dkt. # 12, at 1-2.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). When "[a] final judgment in state court will necessarily resolve all issues before [the] court and the other issues aris[e] out of the same transactions thus allowing comprehensive disposition of litigation," the federal district court should dismiss the case before it. State Farm Mut. Auto. Ins. Co. v. Scholes, 601 F.2d 1151, 1155 (10th Cir. 1979). The Tenth Circuit has outlined five factors to guide district courts in exercising their discretion to hear a declaratory judgment action if there is a similar state court lawsuit pending:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994) (quoting Allstate Ins. Co. v. Green, 825 F.2d 1061, 1063 (6th Cir. 1987)). The first two factors are "designed to shed light on the overall question of whether the controversy would be better settled in state court." United States v. City of Las Cruces, 289 F.3d 1170, 1187 (10th Cir. 2002).

The first two factors support dismissal of this case. See Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc., 685 F.3d 977, 982 (10th Cir. 2012) (analyzing factors one and

5

two together). As to the first factor, a declaratory judgment would not settle the controversy; it would settle only sub-issues of the controversy (breach and damages). In her state court complaint, Jeannie Woolslayer alleged breach of the Redemption Agreement by failing to obtain a timely appraisal, anticipatory breach by not going forward with redemption of Jeannie Woolslayer's shares without a court order, tortious interference with contract by the intervenors, and damages in the form of specific performance and monetary damages. Dkt. # 2-5, at 8-9. WCI asks the Court in this lawsuit to determine whether a discount should or should not be applied to redemption of Jeannie Woolslayer's Class B shares due to their non-voting status. Dkt. # 2, at 8. WCI offered Jeannie Woolslayer $1,600,000 for her Class B stock, reflecting a discounted value. Id. at 6-7. If the Redemption Agreement does not call for a discounted value for Class B stock, WCI will have breached the Redemption Agreement by failing to obtain an appraisal within sixty days of Jeannie Woolslayer's election and failing to pay the appraised amount to redeem her shares. Thus, whether WCI pays the appraised amount or a discounted amount for her shares is central to the issue of breach in the Texas case. The discount issue is also a component of damages in the Texas case, as WCI will have to pay Jeannie Woolslayer either a discounted value or the full value for her shares if it breached the Redemption Agreement. The Court will not preempt the Texas court's determination of these issues.[2] See Kunkel v. Cont'l Cas. Co., 866 F.2d 1269, 1276 (10th Cir. 1989) (The federal court "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding."). As to

---

[2] Contrary to WCI's argument that the Texas case is moot, that case is pending in the Northern District of Texas.

the second factor, although a declaratory judgment would be useful to clarify whether a discount is implied in the Redemption Agreement, it would deprive Jeannie Woolslayer of her chosen forum.

The third factor also favors dismissal of this case. It is clear that WCI is merely engaging in procedural fencing by filing the current lawsuit: WCI filed this lawsuit after Jeannie Woolslayer filed her state court lawsuit, and every argument raised in this case could be raised as an affirmative defense in the Texas case.[3] See St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d 1167, 1169 (10th Cir. 1995) (dismissing the federal case because "[t]he issue in the federal declaratory judgment action is identical to what would be a defense to the state court contract action").

The fourth Mhoon factor supports dismissal of this case. The parties to the current lawsuit are the same parties as those in the Texas case. Dkt. # 27, at 2. Were the Court to decide this case, it would encourage parties to file declaratory judgments in federal courts every time they are sued in state court.[4]

Finally, as to the fifth Mhoon factor, the Texas case provides a better and more effective remedy than a declaratory judgment. WCI argues that a declaratory judgment provides the only remedy because the Texas case does not "encompass the valuation issue" of the amount to be paid to Jeannie Woolslayer. Dkt. # 20, at 10. However, as discussed, the valuation issue is central to

---

[3] WCI argues that Jeannie Woolslayer filed the Texas case in anticipation of this case, but from reviewing the record in this case, there is no evidence of such conduct. Compare Dkt. # 20-3 (email sent to defense counsel on July 30, 2019) with Dkt. # 12-5 (extensive petition filed in state court prior to WCI's counsel sending the email).

[4] WCI argues that Oklahoma law governs Jeannie Woolslayer's breach of contract case in the Texas court and, therefore, this Court is better positioned to decide the controversy. Dkt. # 20, at 9. However, the Texas court is fully capable of applying Oklahoma law. See Helmerich & Payne Int'l Drilling Co. v. BOPCO, L.P., 357 S.W.3d 801, 805 (Tex. App. 2011) ("Oklahoma rules of contract construction are very similar to Texas's rules of contract construction.").

whether WCI breached the Redemption Agreement and what damages WCI will have to pay should the Texas court rule in Jeannie Woolslayer's favor. Should the Texas case be dismissed without resolution of whether payment under the Redemption Agreement is subject to a discount, WCI is free to refile its lawsuit.

The Court has considered all of the Mhoon factors, and finds that Jeannie Woolslayer's motions to dismiss this case (Dkt. ## 12, 27) should be granted.[5]

**IT IS THEREFORE ORDERED** that Jeannie Woolslayer's motions to dismiss (Dkt. ## 12, 27) are **granted**.

A separate judgment is entered herewith.

**DATED** this 25th day of October, 2019.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[5] Intervening plaintiffs ask the Court in the alternative to stay this case pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). However, there are currently two federal actions, and they are not identical. Colorado River is inapplicable.